New-York Special Term, January, 1848.　*Edwards,*
Justice.

*Kem. 148*
*14 Me. 455*
*28 Me. 195. 6.*

Mann, receiver, &c. vs. Currie.

The Same vs. Van Deuzer.

The Same vs. Leland.

Where a person becomes a stockholder in an incorporated company, by a transfer to him of the stock of an original subscriber, he adopts the contract of the assignor with the company, and becomes substituted in his place, both as regards his rights, and his liabilities.

The general principle is well settled that the right of an incorporated company to enforce a forfeiture of stock, and all previous payments, upon the failure of a stockholder to meet the calls made by the company, will not prevent such company, or the receiver thereof, from collecting the balance due upon any share of its stock.

The provision of the revised statutes authorizing the receivers of insolvent corporations to sue for and recover any sum remaining due upon any share of its capital stock, is merely a cumulative remedy.

And the rule is the same, whether the stock be held by an original stockholder, or by an assignee.

The person to whom stock was originally assigned, by a corporation, who still holds the scrip therefor, and whose name stands upon the books of the corporation as the owner thereof, is the one to be proceeded against by the receiver of such corporation, under 2 R. S. 469, § 69, for the recovery of any sum due to the corporation upon the stock held by him; although he may in fact hold such stock as trustee for another, or have assigned it; provided no transfer has been made upon the books of the corporation.

An agreement between the officers of a corporation, and a stockholder, to consolidate the stock held by him, will not affect the rights of creditors of the corporation, or of the other stockholders who were not parties to the arrangement.

In Equity. The bill in each of these causes was filed by the plaintiff as receiver of The Canajoharie and Catskill Rail-Road Company, against the defendant therein as a stockholder of the company, to compel him to pay the balance due upon his shares of stock, to satisfy the debts of the company. The act incorporating the company was passed April 19, 1830, (*Laws of* 1830, p. 296;) and the act was amended, so as to authorize an increase of capital stock, &c. in 1837, (*Laws of* 1837, p. 208.) In the case of Currie, the bill alleged that the

---

Mann v. Currie.

---

defendant was a stockholder, and owner of fifty shares of the capital stock of the company, holding the scrip for the same; that he had paid the sum of $1740,34 upon the shares so held by him; and that there was still due and unpaid, thereon, the sum of $759,66, with interest. The only defence relied upon by the defendant Currie, not already settled by the decision of the assistant vice chancellor in *Mann* v. *Pentz*, (2 *Sandf. Ch. Rep.* 257,) was that the stock standing in his name was originally subscribed for by T. L. Prevost, and that it was transferred by Prevost to him as agent, or broker, for the purposes of sale. The proofs showed that the transfer was made to Currie on his written request to the officers of the company; that the payments of the calls on the stock were made by him; and that the stock stands on the books of the company in his name as owner, and not as agent or broker for Prevost.

The cause was heard on pleadings and proofs.

*J. Van Vleck*, for the plaintiff.

I. The defendant Currie, being the legal owner, and holding the legal title to the stock in question, is liable for the balance due on his shares. It is not material what equities exist between the defendant and some third person. (*Adderly* v. *Storm*, 6 *Hill*, 624.) II. If the defendant held the stock as agent or broker, the existence of that trust should have appeared on the books of the company, in order to discharge the defendant from the liabilities of a stockholder. III. The subsequent transfer of the stock, by the defendant to Prevost, cannot vary or affect the defendant's liability; it not being made on the books of the company, and being after the company was declared insolvent, and proceedings had been instituted to close its affairs. IV. The provisions of the charter for the forfeiture of the stock and all previous payments, do not deprive the receiver of the right to collect the balance due on stock; nor did they prevent the company itself from doing so. The provisions of the act are but a cumulative remedy. (*Troy Turnpike and Rail-Road Company* v. *McChesney*, 2 *Wend.* 296. *Slee* v. *Bloom*, 19 *John. Rep.* 456; *Dutchess Cotton Manufactory* v. *Davis*,

14 *Id.* 238.) V. The plaintiff is entitled to a decree for the balance remaining due on the defendant's shares of stock, and interest thereon, with costs.

*S. Sherwood,* for the defendant Currie.

I. Upon the facts in this case the plaintiff cannot recover against the defendant Currie. (1.) The plaintiff is a receiver merely, at common law, upon a creditor's bill, and can only collect the debts due to the company, with such additional powers as are given under the thirty-sixth section of article two of the title of the statute relative to proceedings against corporations in equity. (2 *R. S.* 464.) (2.) He is not a receiver under the forty-first section of the same title, relative to banks, &c. and of course has none of the powers conferred by that section nor by sections sixty-six and sixty-nine. He has none of the statutory power to sue at law or in equity for any uncalled for balance due upon the shares of stock. II. If the plaintiff is entitled to any remedy for the uncalled for balances upon the shares of stock, it must be upon the contract; and then it would be a remedy at law, to recover the whole balance, or the per centage called. And for such recovery the plaintiff must show, as a pre-requisite, a regular call by resolution of the board. III. The only remedy the receiver could have in equity, unless he pursues a statute remedy, would be a suit bringing in all the solvent partners liable, ascertaining all the claims upon the corporation, and compelling a just and equal contribution. Such a proceeding would avoid the manifest injustice of compelling any stockholder to pay more than his just proportion. It would avoid an oppressive multiplication of lawsuits. And would relieve the receiver from the inconvenience of collecting and holding $200,000 with which to pay $17,000, before he commenced distribution. IV. The defendant in this case, if liable at all, can only be liable upon a contract express or implied to pay the balance uncalled for; and no such contract is shown. (1.) The defendant was not a subscriber for stock, liable by virtue of his subscription. (2.) He is only an assignee of a contract between the company and some of its subscribers

Mann *v.* Currie.

liable to perform the contract (of which the assignment is the evidence) as far as the acceptance of it binds him. (3.) By the assignment he at most agrees to pay the calls of the board of directors or forfeit the previous moneys paid. This is the extent of his liability. V. A trustee holding scrip in good faith, with the knowledge and consent of the company, is not such holder and owner as, from the circumstances, to justify the inference of an agreement to pay for the stock. The re-investing of the real owner with the stock, before suit, gave a remedy against him, if it was imperfect before. The temporary nominal transfer to the defendant worked no injury to the company.

EDWARDS, J. The principal questions which are raised in these cases were decided by the late vice chancellor of the first circuit, then holding the office of assistant vice chancellor. (*Mann, receiver, &c.* v. *Pentz,* 2 *Sandf. Ch. Rep.* 258.) It was contended on the argument by the counsel for the defendants, that inasmuch as I was not bound by the opinion of the assistant vice chancellor, merely on the ground of authority, I ought to re-examine the questions which were decided by him; and the cases were fully argued before me in all their aspects. Upon reflection I am convinced that there are controlling reasons why I should not, in these suits, review the decision made in the case of *Mann* v. *Pentz.* In the first place the parties are different; and secondly, an appeal has been taken from that decision, which is now pending before the supreme court. By the rule which has been adopted, for the distribution of business in this district, the general term has been designated as the appellate branch of the court. And I consider it the right of the parties to the appeal, to have their cause heard by the three judges, without being anticipated by any decision of mine. A different course might be productive of confusion, and inconsistency in the decisions of the several branches of the court; which a regard for the sound and safe administration of justice ought to induce me, if possible, to avoid. With these views, which I am the more readily induced to adopt from a consideration of

Mann *v.* Currie.

the thorough examination which was given to the subject by the assistant vice chancellor, and the exceeding ability of his opinion, I shall apply the principles which he has settled in the case before him, as the rule of my decision in the cases before me.

Before considering the main questions which distinguish these cases from the case of *Mann* v. *Pentz*, I will advert to two questions, which although founded on a state of facts that existed in that case, still do not appear to have been raised or decided: First, that Currie, not being an original subscriber, made no contract with the company; and second, that under the assignment of the stock to him, the most that he agreed to do was, to forfeit the moneys which had previously been paid, in case he should fail to comply with the calls of the company. The answer to the first question is, that if he became a stockholder by a transfer to him of the stock of an original subscriber, he at once adopted his contract with the company, and became substituted in his place, both as regards his rights and liabilities. As to the second question, the general principle is well settled, that the right of the company to enforce a forfeiture is but a cumulative remedy; and, in this respect, there is nothing to distinguish the case of an assignee from that of an original stockholder.

The only question, then, which remains for my decision in the case of Currie, which is first in order, is, whether the defendant is the party who should be made liable for the balance unpaid upon the fifty shares of the stock, standing in his name on the books of the company.

By the ninth section of the statute, (2 *R. S.* 469,) under which this suit is brought, it is provided that, "if there shall be any sum remaining due upon any share of the stock, the receiver shall immediately proceed, and recover the same, and for that purpose may file his bill in chancery," &c. But the statute does not say *from whom* "he shall recover the same." And I am called upon to decide what, in this respect, is its meaning, and legal effect, as applicable to the circumstances of this case. If this question had not already been settled by

authority, at least so far as the principle which must govern it is involved, still I should have no hesitation in saying that the defendant, Currie, is the person against whom the receiver was bound to proceed, and from whom he is entitled to recover. Any other rule than this would lead to uncertainty, confusion, and injustice. As appears by his certificate of stock, he was the party with whom the company contracted. If he wished to transfer his stock and substitute another person in his place, he could have done so. But by the terms and conditions of his certificate of stock, which constituted his contract with the company, he could only have done so by making a transfer upon the books of the company, and by delivering up to them his certificate, either in person or by his attorney. Until such a transfer was made, he was entitled to vote at elections, to receive dividends, and to enjoy the other rights of ownership; and, at the same time he was subject to the liabilities of a stockholder. If he acted as trustee for Prevost, as it is alleged that he did in the first instance, such fact, not appearing in his contract with the company, or on their books, was a matter between himself and his *cestui que trust*. Or if he afterwards assigned the stock held by him, to Prevost, but without making a transfer upon the books of the company, he still continued liable for all sums remaining due upon the shares of stock standing in his name. If there are equities between Currie and Prevost, this is not the proper suit in which to settle them. I consider the principles, which I have laid down, as abundantly sustained by authority. (*Bank of Utica* v. *Smalley*, 2 *Cowen*, 770. *Com. Bank of Buffalo* v. *Kortright*, 22 *Wend*. 348. *Adderly* v. *Storm*, 6 *Hill*, 628. *Union Bank of Georgetown* v. *Laird*, 2 *Wheat. Rep.* 391. *The Marlb. Manuf. Co.* v. *Smith*, 2 *Conn. Rep.* 579.)

As regards the case of Van Deuzer, there is nothing to distinguish it from the case of Currie. It appears that Van Deuzer had executed a power of attorney to Carhart, to transfer the stock which stood in his name, but that no transfer was made upon the books of the company.

As to the case of Leland, I see nothing to induce me to dif-

fer from the opinion expressed by the assistant vice chancellor in the case of *Mann* v. *Pratt,* (2 *Sandf. Ch. Rep.* 273,) that an agreement to consolidate the stock could not affect the rights of creditors of the company, or of the other stockholders who were not parties to the arrangement.

The plaintiff is entitled to a decree for the amount unpaid on the shares of stock, standing on the books of the company, in the names of the defendants, in each of the cases.

---

SAME TERM. *Before the same Justice*