BANK OF COMMERCE v. BANK OF NEWPORT.

(Circuit Court of Appeals, Eighth Circuit. October 22, 1894.)

No. 441.

1. CORPORATION—MEMBER—WHO IS.
   The holders of bank-stock certificates, which stated that the shares were "transferable only on the books of the bank," on surrender of the certificate properly indorsed, sold, indorsed, and delivered such certificates to J. Bros. & Co., who were debtors of the bank. One of the latter firm, and also one of the sellers, notified the bank of the transfer; and the cashier made an entry on the stock-certificate book—which was the only book kept showing who were stockholders—that the certificates were transferred to, and owned by, J. Bros. & Co. *Held*, that the firm of J. Bros. & Co. was a "member" of such corporation, within the meaning of Mansf. Dig. Ark. § 975, which provides that the stock of every corporation shall be transferred only on the books thereof, in such form as the directors prescribe, and such corporation shall "have a lien upon all the stock or property of its members" for all debts due from them to it.

2. SAME—STOCK—LIEN FOR DEBTS DUE FROM MEMBERS—ESTOPPEL.
   The facts that the certificates recited that the shares were transferable only on the books of the bank on the surrender of the certificates, and that the bank did not adopt or use that mode of transfer, did not estop it from claiming a lien on the stock for the debts due it from such firm, as against a subsequent vendee and indorsee of such certificates, who took them from such firm.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

Action by the Bank of Commerce against the Bank of Newport to compel defendant to transfer to plaintiff, on defendant's corporate books, certain shares of its stock. From a judgment for defendant, plaintiff appeals.

U. M. Rose, W. E. Hemingway, and G. B. Rose, for appellant.
J. M. Moore, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. The question to be decided on this appeal arises out of the following facts, which are practically undisputed: On the 3d and 4th days of August, respectively, in the year 1890, the appellee, the Bank of Newport, of Newport, Ark., issued two stock certificates, one of which certified that the firm of Jones Bros. & Mask was the owner of 100 shares of stock

in said bank of Newport, and the other that said firm was the owner of 20 shares of stock. Each certificate stated that the shares were "transferable only on the books of the bank, in person or by attorney, on the surrender of this certificate properly indorsed." Subsequently, Jones Bros. & Mask sold, indorsed, and delivered the two certificates of stock to the firm of Jones Bros. & Co.; and on May 16, 1891, notice of such transfer and sale was given to the Bank of Newport by R. J. Jones, who was a member of the firm of Jones Bros. & Mask, and also a member of the firm of Jones Bros. & Co. A similar notice of sale was given by W. R. Jones, of the firm of Jones Bros. & Co., on July 7, 1891. Thereupon, the Bank of Newport made the following notation on its stock-certificate book, which contained the only record kept by it relative to the ownership and transfer of shares of stock:

"Notified by R. J. Jones that this certificate is transferred to and is owned by Jones Brothers and Company, May 14, 1891. Notified to the same effect by W. R. Jones, and certificate shown, July 7th, 1891."

On the 30th day of January, 1892, Jones Bros. & Co. delivered the certificates to the appellant, the Bank of Commerce, of Memphis, Tenn., as collateral for advances made to Jones Bros. & Co. by the appellant. The certificates at that time bore the indorsement of Jones Bros. & Mask, to whom they had been originally issued. On January 30, 1892, and for some months previously thereto, Jones Bros. & Co. were and had been largely indebted to the appellee, the Bank of Newport. After the delivery of the certificates to the Bank of Commerce, the latter bank requested the appellee to transfer said shares of stock to it, upon the corporate books kept by the appellee for that purpose. This request was refused, the Bank of Newport claiming that it had a lien on said stock to the full amount of the indebtedness due to it from the firm of Jones Bros. & Co., under and by virtue of the following statute of the state of Arkansas, to wit:

"The stock of every such corporation shall be deemed personal property and be transferred only on the books of such corporation in such form as the directors shall prescribe; and such corporation shall at all times have a lien upon all the stock or property of its members invested therein for all debts due from them to such corporation." Mansf. Dig. § 975.

Subsequently, the present action was commenced by the Bank of Commerce against the Bank of Newport to compel a transfer of said stock on the corporate books of the last-named bank. The trial in the circuit court resulted in a decree in favor of the defendant.

The question to be determined is whether the firm of Jones Bros. & Co. was a member of the defendant corporation on January 30, 1892, in such sense that the corporation can avail itself of the lien created by the aforesaid statute of the state of Arkansas. The contention of the appellant is that the firm of Jones Bros. & Co. was not a member of the defendant corporation, within the meaning of the statute, and that, at most, as between the firm and the corporation, the firm only had an equitable title to the stock, which might be transformed into a legal title, and constitute the firm a

member of the corporation, by surrendering the old certificates, and taking out new certificates in the name of Jones Bros. & Co.

It is very generally held, and it may be accepted as the established view, that a provision that shares of stock shall be transferable only on the books of the corporation, in person or by attorney, on the surrender of the old certificate properly indorsed, is a provision intended primarily for the benefit of the corporation, to enable it to preserve an authentic record of its shareholders, and thereby to deal safely and intelligently with its members, in the matter of paying dividends, giving notice of corporate meetings, and in all other matters relating to the internal affairs and the government of the corporation. Incidentally, no doubt, a provision of that kind is also intended to preserve a record of the ownership of stock, to which third parties may resort when they have occasion to purchase or otherwise deal in the stock of the corporation. It has never been supposed, however, that a stipulation of that nature, whether it is contained in the charter or the by-laws, operates as a prohibition against other modes of transfer. Such provisions are merely cumulative. They provide a particular mode of transfer, on which the corporation or its assignee may insist, before the shareholder is released from any of his obligations as a member of the company; but as between the shareholder and his vendee a good title to stock may doubtless be conveyed by a simple indorsement and delivery of the certificate, or by a bill of sale, or any other conveyance which is adequate to transfer the title to any other species of personal property. It is a well-known fact that thousands of shares of stock are daily transferred from hand to hand by a simple delivery of the stock certificates after they have been indorsed in blank by the registered shareholder, and no doubt can be entertained that, as between the parties to such transactions, a good title is conveyed. Johnston v. Laflin, 103 U. S. 800, 804; Spring Co. v. Harris, 20 Mo. 382, 388; Railroad Co. v. Schuyler, 34 N. Y. 30, 80; American Nat. Bank v. Oriental Mills, 17 R. I. 551, 557, 558, 23 Atl. 795; Fisher v. Jones, 82 Ala. 117, 122, 3 South. 13; Robinson v. Bank, 95 N. Y. 637; Haegele v. Manufacturing Co., 29 Mo. App. 486, 492; Cook, Stock, Stockh. & Corp. Law, §§ 378, 379, and cases there cited. It follows, no doubt, from what has been said, that a vendee of stock may have a good title thereto, as against his vendor, although he has not been accepted as a member of the company, and although the vendor has not been released from his obligations as a member or shareholder. This is the necessary result of the doctrine that the corporation is entitled to insist upon the mode of transfer specified in its charter or prescribed by its by-laws, if the method prescribed is reasonable, and does not impose unnecessary restrictions upon the right of the member to sell. We think, however, that it is not true, as seems to be contended in the case at bar, that a mode of transfer provided by the charter or by-laws of a corporation must be in all respects strictly pursued, before the title of the vendee of stock is complete as against the corporation. Considering the fact that a regulation requiring a transfer of stock on the books of the company, and a surrender of the old certificate, is intended primarily

for the benefit and advantage of the corporation, we think that it is competent for the corporation to waive a strict observance of prescribed forms, and to admit the vendee of stock to full membership in the corporation without a literal compliance with such regulations. So much, at least, has already been decided. In the case of National Bank v. Watsontown Bank, 105 U. S. 217, 222, a statute under which the Watsontown Bank was organized provided, in substance, that its shares should be transferable on its books in the presence of its president or cashier, but that no stockholder indebted to the bank for a debt actually due should be authorized to make a transfer until the debt was discharged, or secured to the satisfaction of the directors. It seems to have been the custom of the bank, on the entry of transfers of stock, to cancel the old certificate and issue a new one. In the case before the court the cashier, on being advised of a sale of certain shares by the purchaser thereof, had made an entry on the stock ledger showing the transfer, but the old certificate was not canceled, nor a new one issued. Moreover, the vendor of the stock was indebted to the corporation at the time the transfer was noted on the stock ledger, and he had not been required to discharge the debt, or to secure it to the satisfaction of the directors. It was held, in substance, that a stock certificate is a mere evidence of title to stock, but is not the stock itself; that, independent of the certificate, a person may occupy the relation to a corporation of a legal owner of certain shares of its stock; and that the action of the cashier in noting the transfer of the shares on the stock ledger, although the old certificate was not canceled, nor a new certificate issued, and although the former shareholder had neither paid nor secured his indebtedness to the bank, constituted the vendee the owner of the shares, and precluded the bank from asserting a lien on account of the indebtedness of the former owner. In the case of Upton v. Burnham, 3 Biss. 431, 520, Fed. Cas. Nos. 16,798 and 16,799, a certificate of stock which had been indorsed in blank by the original owner was transferred for value to the defendant, by an intermediate holder, by mere delivery. Subsequently, the corporation, on being advised of the fact, had entered the defendant's name on its books as a shareholder without canceling the old or issuing a new certificate. The certificate contained a clause to the effect that it was transferable on the books of the corporation on the surrender of the certificate. It was held in that case that the entry of the defendant's name on the books of the corporation constituted him the legal owner of the stock, and, as between himself and the corporation, gave him all the rights and subjected him to all of the liabilities of a stockholder. See, also, Insurance Co. v. Smith, 11 Pa. St. 120; Fisher v. Jones, 82 Ala. 117, 3 South. 13; Bank v. Gifford, 47 Iowa, 575, 583; American Nat. Bank v. Oriental Mills, 17 R. I. 551, 558, 23 Atl. 795; Cook, Stock, Stockh. & Corp. Law, § 383, and cases there cited.

The application of the foregoing principles to the case at bar will serve to demonstrate, we think, that Jones Bros. & Co. became members of the defendant corporation, within the meaning of the Arkansas statute, above quoted, long prior to January 30, 1892, by

what had been done to consummate a transfer of the stock. The notation made on the stock-certificate book of the defendant bank, which was the only book kept by it showing who were its stockholders, to the effect that it had been "notified by R. J. Jones that this certificate is transferred to, and 'is owned by, Jones Brothers and Company," was tantamount to a formal acknowledgment by the corporation that it had agreed to release the original shareholder from his obligations as a member of the company, and to accept the vendee of the stock as a member. If it was not the intention of the corporation to thus release the former owner from further liability as a stockholder, or not to acknowledge the full legal ownership of the stock by the transferee, it should have given notice to that effect when the certificate was exhibited to it by the transferee, and when the above notation was made. Not having done so, it clearly relinquished its right to further treat the original owner as a member; and it could not thereafter successfully assert, as against the original stockholder, any right or claim dependent upon the existence of that relation. Such, we think, was the necessary legal effect of that transaction.

It is claimed, however, by the appellant, that it was prejudiced by the statement contained in the stock certificates as to the mode of transfer, and by the neglect of the defendant bank to adopt that mode of transfer, and by its failure to require a surrender of the original certificates when it was notified of the sale and transfer of the stock. On this ground an attempt is made to raise an estoppel against the defendant. With reference to this contention, it is sufficient to say, that the certificates, when acquired by the appellant, conveyed correct information as to who was the owner of the stock. It doubtless accepted the certificates from Jones Bros. & Co. in the belief that that firm was the owner of the stock, and entitled to deal with it as it saw fit, and such was the fact. If at that time the appellant considered it important to know whether, as between the Bank of Newport and the vendee of the stock, the latter had been admitted to full membership in the defendant company, so as to give the company a lien upon the stock for any indebtedness of Jones Bros. & Co., it was its plain duty to have made inquiry. The appellant was affected with knowledge that Jones Bros. & Co. might have been admitted to full membership in the corporation notwithstanding the fact that the old certificate was outstanding, for knowledge of that sort was a matter of law, and it should have ascertained by proper inquiry whether such relation of membership had in fact been established. There is no sufficient ground on which to base an estoppel. It results from what has been said that the decree of the circuit court should be, and it is hereby, affirmed.